IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JASMINE PEREZ,<br><br>                *Plaintiff,*<br><br>    v.<br><br>THE IMA GROUP a/k/a and/or d/b/a INDUSTRIAL MEDICINE ASSOCIATES, P.C.,<br><br>                *Defendant.* | CIVIL ACTION<br>NO. 23-4367 |

**Pappert, J.**                                                                                       **June 10, 2024**

### MEMORANDUM

      Jasmine Perez brings claims pursuant to Title VII of the Civil Rights Act of 1964 and the Pennsylvania Human Relations Act against her former employer, the IMA Group, based on allegations that a coworker made unwanted sexual remarks to her and a supervisor harassed her for being Hispanic and Muslim.

      Perez's Complaint is an amalgamation of grievances that lacks clarity, jumbles distinct causes of action together and includes a reference to an individual who seemingly is not part of the case. *See* (Compl. ¶ 32). As best the Court can tell, Perez asserts race discrimination, religious discrimination, hostile work environment, sexual harassment and retaliation claims. IMA moves to dismiss all counts, and the Court grants its motion in part and denies in part for the reasons that follow.

I

      Perez began working at the IMA Group in 2021, though the exact date is unclear. The Complaint alleges she began work on November 3, 2021, but the EEOC

charge of discrimination says she was hired on April 5 of that year. *Compare* (Compl. ¶ 12, ECF No. 1), *with* (ECF No. 4-1, at 2). In any event, Perez alleges a coworker, Tyrone McNeil, made comments to her such as "a birdie said you need to be fucked real good" and that she has "a fat ass" and "big titties." (Compl. ¶¶ 15, 16). McNeil was "permitted to harass Perez for a period of time" before he was fired. (*Id.* ¶ 16).

In another thread of allegations, Perez says her supervisor, Pamela Mitchell, discriminated against her because she is a Hispanic Muslim. (*Id.* ¶¶ 18–20). Mitchell often complained about the Islamic quotes and sayings displayed in Perez's cubicle, imitated the Muslim call to prayer on Perez's work phone and told Perez she had never seen a Hispanic Muslim. (*Id.* ¶¶ 18–19). Mitchell also complained that her son was Muslim even though she raised him Catholic. (*Id.* ¶ 20). Mitchell remarked that Asian employees were "greedy for money" and made disparaging comments about another Hispanic employee's hair. (*Id.* ¶ 21). Beginning on November 3, 2021, Perez called IMA's hotline to report Mitchell's discrimination. (*Id.* ¶ 17). Perez spoke with human resources twice about Mitchell's behavior before Perez was fired on February 7, 2022. (*Id.* ¶ 22). She filed a charge of discrimination with the EEOC on November 28, 2022. (ECF No. 4-1).

II

To survive dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pled "allow[] the court to draw the reasonable inference that

[a] defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged," but not shown, "that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

When the complaint includes well-pleaded factual allegations, courts "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *See Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679). However, this "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on [their] face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation marks omitted). This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (quoting *Connelly*, 809 F.3d at 786–87).

Claims under Title VII and the PHRA are analyzed together because they fall under the same analytical framework. *Qin v. Vertex, Inc.*, 100 F.4th 458, 470 (3d Cir. 2024).

### III

It is unclear if Perez is asserting disparate treatment claims based on her race, gender or religion. (Compl. ¶¶ 1, 25). To the extent she is, they are dismissed. In her response brief, Perez did not substantively address IMA's arguments to dismiss the purported disparate treatment claims. A response in opposition to a motion to dismiss that fails to respond to a substantive argument is a waiver or abandonment of that

claim. *See Dreibelbis v. Scholton*, 274 F. App'x 183, 185 (3d Cir. 2008) (affirming district court's finding of waiver as to an argument where plaintiff had opportunity to address it in his opposition brief but failed to do so); *Levy-Tatum v. Navient Sols., Inc.*, 183 F. Supp. 3d 701, 712 (E.D. Pa. 2016) (dismissing claims not addressed in plaintiff's response to defendant's motion to dismiss).

IV

Perez also asserts hostile work environment and sexual harassment claims. Both claims[1] require a plaintiff to show: (1) she suffered intentional discrimination; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person in that position; and (5) *respondeat superior* liability exists. *Castleberry v. STI Grp.*, 863 F.3d 259, 263 (3d Cir. 2017). In analyzing the severity or pervasiveness of a plaintiff's claim, "a court must consider the totality of circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 168 (3d Cir. 2013) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).

---

[1] The Court reads Perez's Complaint to assert a hostile work environment sexual harassment claim, not a quid pro quo sexual harassment claim.

4

A

Perez alleges enough to nudge her hostile work environment claim based on religion across the line from conceivable to plausible. *Twombly*, 550 U.S. at 570. Mitchell imitated the Muslim call to prayer on Perez's phone and "often" complained about the Islamic quotes in Perez's cubicle. (Compl. ¶¶ 18–19). Mitchell also "often" told Perez that she "did not understand" why her son was Muslim given that she raised him Catholic. (*Id.* ¶ 20). Perez raised her grievances with Mitchell to human resources on multiple occasions, further suggesting the conduct may have been pervasive. (*Id.* ¶¶ 17–18, 20, 22). Perez says she was "profoundly upset" by the discrimination and suffered emotional distress and embarrassment, (*id.* ¶¶ 27, 30(c)), and it is reasonable to infer that being critical of or mocking one's religion would detrimentally affect a reasonable person in similar circumstances. Finally, Perez also alleges *respondeat superior* liability given that Mitchell was her supervisor. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998).[2]

B

Perez fails to state a sexual harassment claim. Unlike her claim of a hostile work environment based on religion, Perez does not allege facts suggesting the sexual harassment was sufficiently severe or pervasive. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986). "Unless extremely serious, offhand comments and isolated

---

[2]   To the extent Perez is asserting a hostile work environment claim based on race discrimination, her claim fails. Allegations that Mitchell said she had "never seen a Hispanic Muslim" and made disparaging comments about another Hispanic employee's hair say nothing about race discrimination. Moreover, the two alleged incidents fall well short of being severe or pervasive enough to support a hostile work environment claim.

incidents are insufficient to sustain a hostile work environment claim." *Chinery v. Am. Airlines*, 778 F. App'x 142, 145 (3d Cir. 2019).  Perez only alleges McNeil's comments occurred "for a period of time" without indicating when or how often the comments occurred.  (Compl. ¶ 16).  Without more, McNeil's alleged comments, though inappropriate and offensive, fall well short of the kind of conduct deemed severe or pervasive.  *Compare Starnes v. Butler Cnty. Ct. of Common Pleas, 50th Jud. Dist.*, 971 F.3d 416, 428 (3d Cir. 2020) (finding plaintiff's allegations that her supervisor "coerced her into engaging in sexual relations, shared pornography with her, asked her to film herself performing sex acts, engaged in a pattern of flirtatious behavior, scolded her for speaking with male colleagues, assigned her duties forcing her to be close to him, and treated her differently than her male colleagues" sufficient to show severe or pervasive discrimination); *Spence v. New Jersey*, No. 19-21490, 2021 U.S. Dist. LEXIS 70128, at *14–15, 20 (D.N.J. Apr. 12, 2021) (dismissing plaintiff's sexual harassment claim based on allegations that a coworker blew kisses at her, asked her "inappropriate, personal questions," made sporadic "sexually offensive comments and gestures" and once approached her from behind and pushed his groin into her because, *inter alia*, the complaint alleged the harassment occurred "on a regular basis" rather than say when or how many times it happened).

Perez also fails to allege *respondeat superior* liability.  "When the hostile work environment is created by a victim's non-supervisory coworkers, the employer is not automatically liable."  *Huston v. Procter & Gamble Paper Prods. Corp.*, 568 F.3d 100, 104 (3d Cir. 2009).  Rather, employer liability exists where (1) "the employer failed to provide a reasonable avenue for the complaint," or (2) "if the employer knew or should

have known of the harassment and failed to take prompt and appropriate remedial action." *Id.* "[W]hen an employer's response stops harassment, there cannot be Title VII liability." *Kunin v. Sears Roebuck & Co.*, 175 F.3d 289, 294 (3d Cir. 1999). Here, Perez vaguely asserts that McNeil was "permitted to harass [her] for a period of time" but does not indicate if IMA failed to provide a reasonable procedure for complaints or that IMA knew or should have known of the harassment and failed to take prompt and appropriate remedial actions. *Huston*, 568 F.3d at 104. Though Perez says she reported Mitchell's conduct, (Compl. ¶ 17), she does not include a similar allegation that she reported McNeil's or that IMA failed to take prompt and appropriate actions in response to her complaints. To the contrary, Perez says the sexual harassment stopped when IMA fired McNeil. (*Id.* ¶ 16). Perez's sexual harassment claim is dismissed, though she will be allowed to amend it.[3]

V

Perez plausibly alleges a retaliation claim. A *prima facie* retaliation claim requires a plaintiff to show: (1) that she engaged in protected activity; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action. *Qin*, 100 F.4th at 475. Here, Perez engaged in protected activity when she twice spoke to human resources about Mitchell's discriminatory conduct. *Moore v. City of*

---

[3] Because the Court dismisses Perez's sexual harassment claim on the merits, it need not decide whether the claim is time-barred. Still, as to her claim under the PHRA, it is not clear if Perez asked the EEOC to cross-file her charge of discrimination with the PHRC, and her EEOC charge was filed on November 28, 2022—over 180 days after she was fired at IMA. *See Mandel*, 706 F.3d at 163 ("To bring suit under the PHRA, an administrative complaint must be filed with the PHRC within 180 days of the alleged act of discrimination."). Perez should address these issues in her amended complaint.

*Philadelphia*, 461 F.3d 331, 341–43 (3d Cir. 2006) (noting protected activity includes "informal protests . . . including making complaints to management"). She suffered an adverse employment action when she was fired on February 7, 2022. *Abramson v. William Paterson Coll.*, 260 F.3d 265, 288 (3d Cir. 2001). Perez contends she *began* raising her concerns about Mitchell's conduct on November 3, 2021—roughly three months before she was fired—and spoke with human resources twice. (Compl. ¶¶ 17, 22). As alleged, the Complaint suggests Perez engaged in protected activity less than three months prior to being fired, close enough at this stage to be "unusually suggestive of a retaliatory motive." *Qin*, 100 F.4th at 476–78 (emphasizing an "unduly suggestive" timeframe of three months).

    An appropriate Order follows.

BY THE COURT:

***/s/ Gerald J. Pappert***
Gerald J. Pappert, J.
